# Duffield et al. *versus* Miller.

M. agreed to loan to the Titusville Savings Bank $9000 in U. S. bonds, which were to be returned to M. in sixty days, and for the performance of this contract a number of the shareholders of the bank became jointly and severally liable. The bank was to hypothecate the bonds for the purpose of raising money to meet its liabilities, and the bank did hypothecate them by depositing them as collateral security in a bank in New York. Certain overdrafts of the Titusville Bank being unpaid, the New York bank sold the bonds, and placed the proceeds to the credit of the Titusville Bank. M. brought an action of trover against the shareholders of the latter bank. *Held*, that as the Titusville Bank did not authorize the sale of the bonds by the New York bank, further than an authority to sell may be implied from the pledge itself, there was no breach of trust or tortious conversion by defendants, and the bonds having been sold, and the plaintiff's right thereto divested, he owned nothing that could be the subject of an action of trover. All that was left to him was an action upon his agreement.

November 24th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county*: Of October and November Term 1878, No. 241.

Trover and conversion by Robert Miller against C. C. Duffield and others.

The following point and answer of the court below thereto, together with the facts as set forth in the opinion of this court,

[Duffield v. Miller.]

state the case: If the jury find from the evidence that plaintiff loaned the bonds in controversy to defendants for the purpose of hypothecating or raising money upon them as security for the uses of the bank, and that defendants did in good faith use the bonds for that purpose, this action cannot be maintained.

Ans. " Had the defendants merely hypothecated in place of converting the bonds, this point would have been affirmed. But they had no right to convert the bonds into money. Thus explained the point is negatived."

Verdict for plaintiff for $12,307.50. Defendants took this writ, their first assignment of error being the answer to the foregoing point.

*D. C. McCoy, F. B. Guthrie* and *F. L. Seely*, for plaintiffs in error.—We contend that the contract between the parties constituted a loan of the bonds from Miller to the defendants; that a failure to return the bonds under the terms of the contract was but the violation of a contract for which Miller might, in a proper form of action, recover against the defendants; but that it was not a tortious breach of the contract, for which the action of trover will lie.

Miller had parted with the bonds for a specific time and purpose, and at the time they were sold had neither an actual or constructive possession thereof, nor was he entitled to the immediate possession, and therefore cannot maintain trover: Mather *v.* Trinity Church, 3 S. & R. 512; Purdy *v.* McCullough, 3 Barr 466; Castor *v.* McShaffery, 12 Wright 437; Hilliard on Torts 592 and 693; Kelsey *v.* Griswold, 6 Barb. 436; Gordon *v.* Harper, 7 Term Rep. 9; Horsefield *v.* Cost, 3 Alden's Condensed Rep. 427–28.

*John J. Henderson*, for defendant in error.—Admitting that the plaintiff might have sued on the contract, he also has a right to this action. A bailor may maintain trover against a bailee, if conversion is proved, though assumpsit or case may also be maintained: Lockwood *v.* Bull, 1 Cowen 322; Murray *v.* Burling, 10 Johns. 175. It is often desirable to sue in trover, rather than in assumpsit: 1 Saund. Pl. 167. The defendants had no right to make any disposition of the bonds, which would deprive the plaintiff of them. They were bound to protect his title, and any other use of them than that contemplated, was a conversion: Work *v.* Bennett, 20 P. F. Smith 484; Homer *v.* Thwing, 3 Pick. 492; Wheelock *v.* Wheelwright, 5 Mass. 104; Green *v.* Sperry, 16 Vt. 390. Every assumption of property in, or exercise of authority over the goods of another, inconsistent with the title of the rightful owner, or in exclusion of his right is a conversion: Commonwealth *v.* Chathams, 14 Wright 181; Bristol *v.* Burt, 7 Johns. 254; Murray *v.* Burling, 10 Id. 175; Baldwin *v.* Cole, 6 Mod. 212; Work

*v.* Bennett, 20 P. F. Smith 484. If, after the party has received goods, though legally, he sell or otherwise dispose of them tortiously, no demand is necessary, for his subsequent act is in itself a conversion : 1 Chitty 158 ; Grant *v.* King, 14 Vt. 367 ; Work *v.* Bennett, 20 P. F. Smith 484 ; Neiler & Warren *v.* Kelly, 19 Id. 403.

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

The defendant's first point goes to the bottom of this case. It denies the right of the plaintiff to recover in this form of action. The court below denied the point as applied to the facts, and ruled that the plaintiff had a right to sue in trover.

The action was brought to recover damages for the conversion of $9000 of United States bonds. The defendant Duffield was the cashier of the Titusville Savings Bank, an unincorporated association. The other defendants were shareholders. The plaintiff had made a special deposit of the bonds in question with the bank. The latter, becoming embarrassed, entered into negotiations with the plaintiff for the use of his bonds to assist it in raising money which resulted in the following agreement :

"Titusville, Pa., October 10th 1878.

Received from Robert Miller nine thousand dollars in United States bonds, which we hereby agree to return to the said Miller within sixty days from this date. And we hereby jointly and severally bind ourselves for the faithful performance of this agreement. Witness our hands and seals."

This agreement was signed by each of the defendants. The defendant Duffield took the bonds to New York and deposited them with the Importers' and Traders' Bank as collateral, in consideration of which the latter bank allowed the Titusville Bank to overdraw its account to the value of the bonds. The account not being made good, the Importers' and Traders' Bank sold the bonds and credited the Titusville Bank with the proceeds. The defendants having failed to return the bonds, as specified in the agreement, the plaintiff brought this action of trover to recover damages for their conversion.

It is not denied that the defendants borrowed these bonds for the very purpose of using them as collateral to raise money. The plaintiff says in his testimony : "The bank had suspended when they got the bonds. They got them to raise money. They said they wanted the bonds to hypothecate ; to put them up and get money." It thus appears, from the plaintiff's own showing, that the defendants were authorized to do just what they did, that is, to hypothecate the bonds for the purpose of raising money. They did not sell them, nor authorize their sale by the New York bank

[Duffield *v.* Miller.]

further than an authority to sell may be implied from the pledge itself. There was, therefore, no breach of trust in the case, nor any *tortious* act committed by the defendants, unless the failure to redeem and return the bonds can be so considered.

We do not so regard it. When the plaintiff authorized the managers of a failing bank to use his bonds to raise money, he must have known that it might not be in their power to return them. At any rate there was a risk, and he assumed it. Having been pledged by his authority, the pledgee has a right to sell for non-payment of the money borrowed, and such sale passed the title. At the time this suit was brought the bonds had been sold, and the plaintiff's rights divested. He owned nothing that could be the subject of an action of trover. All that was left him was a right of action upon his agreement. It is well settled that to maintain trover the plaintiff must have a property in the chattel, general or special, and the actual possession or the right to immediate possession: Mather *v.* Trinity Church, 3 S. & R. 509; Castor *v.* McShaffery, 12 Wright 437; 1 Chitty on Pleading 148, and cases there cited.

As what has been said is decisive of the case it is unnecessary to discuss the remaining assignments of error.

Judgment reversed.